UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SHERI BARTLETT (f/k/a CROWELL) | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 3:08-CV-597 PPS |
| NIBCO INC., | ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Plaintiff Sheri Bartlett brought this action against her former employer, NIBCO Inc., alleging sex discrimination in violation of Title VII and the Indiana Civil Rights Law, retaliatory termination in violation of Title VII, and wage discrimination under the Equal Pay Act. [DE 1.] This matter is now before the Court on NIBCO's motion for summary judgment. [DE 23.] For the reasons discussed below, the motion is **GRANTED in part** and **DENIED in part**. Specifically, the Court **GRANTS** NIBCO's motion as to Bartlett's sex discrimination claims under Title VII and the Indiana Civil Rights Law, and her Equal Pay Act claim, but **DENIES** the motion as to Bartlett's Title VII retaliation claim.

## FACTUAL BACKGROUND

NIBCO is an Elkhart, Indiana manufacturer of metal and plastic fittings and valves used in the construction industry. [DE 25, ¶¶ 1-2.] Sheri Bartlett began working there in April 1996, as an administrative assistance in NIBCO's marketing department. [*Id.*, ¶¶ 3.] Over the years, Bartlett moved up the ranks within that department, serving as a pricing administrator, marketing specialist, and pricing analyst. [*Id.*, Ex. A, ¶ 4.] In March 2007, NIBCO promoted Bartlett to associate product manager for NIBCO's general application plastic products.

[DE 25-2, Ex. A, ¶ 4.] NIBCO's plastic products are primarily used in the residential construction industry. [DE 25, ¶ 15.]

Bartlett's duties as an associate product manager included monitoring price trends, maintaining product literature, tracking product performance, and making pricing recommendations. [*Id*., ¶ 8.] She performed well in this position. In August 2007, her then supervisor, Bob Christiano, gave her an "A+" on her mid-year performance review, praising her "significant accomplishments" and ability to "hit the ground running strong for having no practical experience as a product manager." [DE 27, Ex. 8-C.] Christiano added that Bartlett "exceeded" expectations in this new position. [*Id*.]

Bartlett was still receiving commendation for her job performance in late 2007. Bill Geers, the marketing department's director and a member of NIBCO's operating committee, praised her performance at a December 2007 holiday party—a party to which only select NIBCO associates, like Bartlett, were invited. [DE 27, ¶¶ 11-12 & Ex. 9.] Around the same time, Geers sent Bartlett a holiday greeting card, thanking her for her hard work and predicting that 2008 would be a great year. [*Id*., ¶ 13 & Ex. 8-B.]

NIBCO, however, was going through a down market in late 2007. On November 15, 2007, NIBCO's president and COO, Steve Malm, distributed a memo to the operating committee members, including Geers, which specifically addressed the effect of the downward trend on the residential construction market. [DE 25, ¶ 10; DE 25-2, Ex,. A, Ex. 6.] Malm's memo instructed Geers and other NIBCO managers to take a belt-tightening response to the down market, and to "[l]ook closely at your organization and ask the question 'would I replace that function today if it was open?' If the answer is no, we should take action." [DE 25, ¶ 11.]

At the time Malm circulated the November 15 memo, NIBCO's marketing department had two employees other than Bartlett assigned to residential products: product manager Brien Welsh, a male employee, and senior product manager Sheryl Hansen, a female employee. [*Id*., ¶ 16.] Geers decided that he and Hansen could absorb the essential functions of Bartlett's and Welsh's positions. [*Id*., ¶ 18.] So on January 8, 2008, he met with Tom Eisele, NIBCO's general counsel, to discuss his recommendation that NIBCO terminate Bartlett and Welsh. [*Id*., ¶ 20.]

Two days later, on January 10, 2008, Bartlett met with Geers to discuss her concern that she and other female NIBCO employees had been subjected to sexual harassment by Christiano, who NIBCO had terminated in November 2007, and other male supervisors. [DE 26 at 4; DE 25, ¶ 22.] Bartlett told Geers that Christiano had asked her out on several occasions, and that she had refused those requests. [DE 25, ¶ 23.] Bartlett recommended to Geers that NIBCO respond to this by scheduling a training program to remind employees of the company's sexual harassment policy. [*Id*.] Eleven days after that, on January 21, 2008, Geers fired Bartlett and Welsh. [DE 25, ¶¶ 25-26.]

At her termination meeting, Bartlett asked Geers whether NIBCO had any other jobs she could apply for, but Geers told her nothing was available. [DE 27, ¶ 15.] However, at the time of her termination, and at least since January 16, 2008, NIBCO had been advertising for a customer service position as an EDI Administrator. [DE 27, ¶ 14; DE 25-6 at 20.]

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

3

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons, Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party must then set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In resolving a motion for summary judgment, I must draw every reasonable inference from the record in the light most favorable to the non-moving party. *Haefling v. United Parcel Serv., Inc.,* 169 F.3d 494, 497 (7th Cir. 1999). The non-moving party must support its contentions with admissible evidence and may not rest upon mere allegations in the pleadings or conclusory statements in affidavits. *Celotex*, 477 U.S. at 324. The plain language of Rule 56 mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. The production of only a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Anderson*, 477 U.S. at 252.

**I.      Bartlett's Title VII Retaliation Claim**

Bartlett contends that NIBCO fired her in retaliation for telling Geers about the sexual harassment she and other female employees had experienced, and her suggestion that NIBCO

4

provide sexual harassment training in response to those concerns. Title VII prohibits an employer from discriminating against an employee because she has opposed a practice that Title VII has made "an unlawful employment practice," or because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. *See* 42 U.S.C. § 2000e-3(a).

A Title VII plaintiff can prove retaliation using either the direct or indirect method of proof. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 784 (7th Cir. 2007). Bartlett says she is proceeding under the indirect, burden-shifting method, and indeed her brief tracks the indirect method's burden-shifting framework. [DE 26 at 5.] But Bartlett also clearly argues for, and has evidence of, a causal link between her discussion with Geers and her subsequent termination. For example, Bartlett contends that the "[c]lose temporal proximity" between her discussion with Geers and her subsequent termination "provides evidence of causation." [DE 26 at 7.] Moreover, NIBCO responds to Bartlett's direct method of proof by denying that such close temporal proximity can prove causation. [DE 30 at 6]. So, in reality, Bartlett is also proceeding, and NIBCO is responding, under the direct method. *Cf. Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 643 (7th Cir. 2002) ("*McDonnell Douglas* is designed to give the plaintiff a boost when he has no actual evidence of discrimination (or retaliation) but just some suspicious circumstances. If he can prove that his protected expression caused him to be fired, he doesn't need *McDonnell Douglas* and it gives him nothing.").

Because I find that Bartlett has presented enough evidence of retaliation to defeat summary judgment under the direct method, I need not address whether her retaliation claim would survive summary judgment under the indirect method. *See Lang v. Illinois Dep't of*

5

*Children and Family Servs*., 361 F.3d 416, 421 (7th Cir. 2004) (unnecessary to analyze plaintiff's retaliation claim in terms of burden-shifting method where plaintiff defeats summary judgment using direct method); *see also Stone*, 281 F.3d at 643.

To prove retaliation under the direct method, a Title VII plaintiff must offer evidence that: (1) she engaged in a statutorily protected activity; (2) the defendant subjected her to an adverse employment action; and (3) a causal connection exists between the two events. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008). Bartlett meets the first and second elements of this test. She engaged in a statutorily protected activity when she went to Geers to discuss her sexual harassment concerns. And she was subjected to an adverse employment action when she was fired. As to the third element – whether there is a causal link between the two – Bartlett relies on circumstantial evidence, which the law permits her to do, even under the direct method. *Sylvester v. SOS Children's Vills. Ill., Inc.,* 453 F.3d 900, 902 (7th Cir. 2006). Circumstantial evidence can be any type of proof that allows for an inference of retaliation. *Id.*, at 903.

Bartlett's strongest circumstantial evidence is the suspicious timing of her termination, which occurred just 11 days after her discussion with Geers. But suspicious timing, standing alone, is not sufficient. Under older Seventh Circuit law, such a close temporal connection between Bartlett's discussion with Geers and her subsequent termination might have satisfied the third element of the direct method's test. *See McLendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir. 1997) ("we have found the causal nexus sufficiently demonstrated when the time period between the filing of a complaint and an adverse action was . . . one week."); *Holland v. Jefferson Nat'l Life Ins. Co*., 883 F.2d 1307, 1310 & 1314-15 (7th Cir. 1989) (one week). More recently, however, the Seventh Circuit has held that "absent other evidence of retaliation, a

6

temporal relation is insufficient evidence to survive summary judgment." *Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001); s*ee also Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001) (plaintiff "needs more than a coincidence of timing to create a reasonable inference of retaliation"); *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 630 (7th Cir. 2001) (same).

Bartlett, though, points to enough evidence beyond suspicious timing to create a triable issue as to whether her discussion with Geers and her subsequent termination are causally linked. Bartlett's termination occurred less than six months after a glowing mid-year performance review – an A+ no less – in which she was praised for exceeding expectations in her new position. [DE 27, Ex. 8-C.] Viewing the evidence in the light most favorable to Bartlett, her termination just months after this review, with no intervening negative reviews, contributes to an inference of causation, notwithstanding NIBCO's economic pressures. *Cf. Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005) (termination after performance review stating that employee met or exceeded expectations contributed to circumstantial evidence of causation).

NIBCO's refusal to consider Bartlett for alternative available positions also contributes to an inference of causation, particularly given her 12-year tenure with the company, and her apparent qualification for the EDI Administrator position in NIBCO's customer service department. [DE 27, ¶¶ 14-15; DE 27, Ex. 8, ¶ 11; DE 25-6 at 20.] Even if Bartlett were not fully-qualified for this position, her 2007 mid-year performance review shows that she had already "exceeded" expectations in a position for which Bartlett initially was not qualified. [DE 27, Ex. 8-C; DE 25-2, Ex. A, ¶ 5 & Ex. 5.] Geers' refusal to consider her for another apparently open position, despite her longevity with the company, and proven ability to adapt, could lead a

7

reasonable fact finder to conclude that her termination was retaliatory.

What's more, NIBCO's explanation that it had already filled the EDI Administrator position at the time of Bartlett's termination just adds to the already suspicious timing of the events surrounding Bartlett's termination. NIBCO contends, in an interrogatory answer, that it filled the EDI Administrator position with a male candidate on January 20, 2008, the day before Bartlett's termination. [DE 27, Ex. 2 at 15.] But, as Bartlett points out, that day fell on a Sunday, when NIBCO's administrative offices presumably were closed. [DE 27, ¶ 17.]

Bartlett cites to additional evidence that, in light of the suspicious timing of her termination, also supports an inference of causation, including Geers' praise for her performance and future prospects at an invitation-only December 2007 NIBCO holiday party [*Id*., ¶¶ 11-12 & Ex. 9], and his December 2007 holiday greeting card, thanking her for her hard work and predicting that 2008 will be a great year [*Id*., ¶ 13 & Ex. 8-B]. Moreover, following her termination, NIBCO circulated an apparently company-wide announcement that Bartlett "left NIBCO to pursue other interests." [*Id*., Ex. 5.] This of course wasn't true. It may have been that NIBCO was simply being nice in describing her departure in such a way, but ultimately that would be for a jury to decide.

Also suspicious is Geers' self-serving recollection of the time-line of events. According to Geers, he decided to fire Bartlett (and Welsh) just one day before Bartlett came to him to discuss sexual harassment, and two days before Geers says he informed Eisele of this decision. [DE 25-2, Ex. A, Ex. 10.] Yet, other than Geers' after the fact reconstructed time-line, NIBCO has no documentation of Geers' supposed meeting with Eisele, or his supposed termination decision. It's frankly a little hard to believe that a meeting took place where it was decided to

terminate two employees and yet there was nothing to document that the meeting took place – even so much as an email setting the meeting up or a calendar entry.

NIBCO of course contends that it fired Bartlett for a lawful reason – the downturn in the market for residential construction. And it relies primarily on Steve Malm's memo, directing managers, like Geers, to cut costs wherever they can. [DE 25-2, Ex. 6.] But as Bartlett notes, Malm's memo does not expressly instruct the operating committee members to eliminate or absorb anyone's position. [*Id*.] In any event, the fact that NIBCO may be able to produce evidence that Bartlett's discharge was not retaliatory does not entitle it to judgment. It simply creates a triable issue of fact as to whether the reason it gave for the termination is true. In light of the circumstantial evidence detailed above, a reasonable fact finder could find that it is not. *See Stone*, 281 F.3d at 643. Summary judgment is therefore denied on the retaliation claim.

## II.  Bartlett's Equal Pay Act Claim

Bartlett contends that NIBCO violated the Equal Pay Act by paying her less than a male employee with less seniority who performed the same work as Bartlett. [DE 1, ¶ 28.] NIBCO contends, and I agree, that Bartlett lacks evidence that any male employee was paid more money for equal work.

In particular, Bartlett alleges that she was paid less as an *associate product manager* than a male *product manager* who, despite their differently-titled positions, performed the same work. [DE 1, ¶¶ 11-12.] Bartlett's complaint fails to identify the male product manager she references. But her response confirms that Welsh is who she has in mind. [DE 27, ¶ 2(g).] And NIBCO identifies Welsh as the only male product manager in the marketing department. [DE 25, ¶ 16; DE 25-2, Ex. A, Ex. 2.] NIBCO also points out, and Bartlett does not dispute, that the only other

9

*associate product manager* in the marketing department – Jeff Hlade – was male and was paid less than Bartlett. [DE 25, ¶¶ 5 & 9.]

To establish her *prima facie* case of wage discrimination under the Equal Pay Act, Bartlett must show that: "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998); *see also Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003).[1]

The parties' dispute centers on the second element of the test, whether Bartlett and Welsh performed equal work. In determining whether two jobs are equal, the crucial inquiry is "whether the jobs to be compared have a 'common core' of tasks, *i.e.*, whether a significant portion of the two jobs is identical." *Fallon v. Illinois*, 882 F.2d 1206, 1209 (7th Cir. 1989) (citations and quotation marks omitted). The Equal Pay Act specifies three separate factors that courts must consider in assessing this element: skill, responsibility and effort. *Cullen*, 338 F.3d at 698 (citing 29 U.S.C. § 206(d)(1)). Bartlett must satisfy each of these factors to establish her *prima facie* case. *Id*.

Under the EPA, skill includes consideration of such factors as experience, education, and ability. *See Cullen*, 338 F.3d at 699 (citing 29 C.F.R. § 1620.15(a)). "Possession of a skill not needed to meet the requirements of the job," however, "cannot be considered in making a

---

[1] Assuming that Bartlett could meet this burden, the burden would shift to NIBCO to show that the pay differential arises from a seniority system, a merit system, a system that measures earnings by quantity or quality of production, or any factor other than gender. *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 976 (7th Cir. 2000). Because Bartlett cannot meet the *prima facie* case, I need not discuss NIBCO's burden.

determination regarding equality of skill." 29 C.F.R. § 1620.15(a); *see also Cullen*, 338 F.3d at 699.

As for *experience*, Welsh had several years of product management experience when NIBCO hired him, whereas Bartlett had no such experience when she was hired. Bartlett really doesn't dispute – nor could she – that she had less management experience than Welsh. She certainly didn't accumulate product management experience during her tenure with NIBCO that matches Welsh's experience. Prior to her promotion to associate product manager, Bartlett had worked in NIBCO's marketing department, in a variety of roles, including administrative assistant, marketing specialist and pricing analyst. [DE 25-2, Ex. A, ¶ 4.] Bartlett does not contend that she gained management experience in any of these roles.

Welsh's position clearly required *abilities* that Bartlett's did not. Notably, Welsh, but not Bartlett, was responsible for strategic development, and decisions with regard to product line development and marketing. [DE 25, ¶¶ 8 & 17.] Moreover, Welsh, but not Bartlett, was responsible for developing and executing corporate growth, advertising and pricing strategies. [DE 25-2, Ex. A, ¶ 12.]

Taking these factors into account, in the light most favorable to Bartlett, Welsh's position clearly required more skill than Bartlett's.

The next question is whether the positions involved equal *responsibilities*. "Responsibility is concerned with the degree of accountability required in the performance of the job, . . . ." 29 C.F.R. § 1620.17(a). Bartlett contends that Welsh performed the same job tasks as her. [DE 26 at 3 & 8.] But her evidence for this is limited to her assertion that she "did all the tasks of a product manager," and similarly nonspecific assertions. [*See* DE 27, ¶ 2(h) & Ex. 8,

¶¶ 9-10.] Bartlett's failure to cite concrete facts regarding the tasks she performed prevents her from showing that her job and Welsh's involved equal responsibilities. *See Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 615 (7th Cir. 2001) (uncorroborated, conclusory statements insufficient to withstand summary judgment); *see also Harmon v. Leggett & Platt, Inc.*, No. 1:04 CV 348, 2005 WL 2562991, at *6 (N.D. Ind. Oct. 12, 2005) (Equal Pay Act plaintiff's affidavit, asserting she performed same core tasks as higher paid males, insufficiently specific to defeat summary judgment).

NIBCO, on the other hand, identifies a number of significant tasks that Welsh, but not Bartlett, performed, including leading product development teams, developing and implementing pricing and advertising strategies, and setting growth and other financial objectives. [DE 25, ¶ 17.] Bartlett's position did not involve any of these tasks. [*Id.*, ¶ 8.] Rather, she was responsible for such tasks as monitoring price trends, maintaining product literature, tracking product performance, and assisting the senior product manager. [*Id.*] Moreover, as Geers testified, unlike Welsh's product manager position, Bartlett's associate product manager position was "a developmental - or learning - position, which means that the person in this position works in conjunction with or for a Senior Product Manager or a Product Manager." [DE 25-2, Ex. A, ¶ 5.]

I must now look at whether Welsh's and Bartlett's positions required equal *effort*. "Job factors which cause mental fatigue and stress . . . are to be considered in determining the effort required by the job." 29 C.F.R. § 1620.16(a). In this case, Welsh's position as a product manager required more effort. Although Welsh and Bartlett both reported to the same senior product manager, Sheryl Hansen, Welsh's additional strategic development responsibilities

probably created more stress. In any event, Bartlett does not address the issue, much less provide evidence that her position required more effort than Welsh's.

The foregoing factors, taken together and in the light most favorable to Bartlett, show that Bartlett's and Welsh's positions did not share a common core of tasks. Nor does Bartlett point to another higher paid male NIBCO employee who performed the same work as her. Accordingly, Bartlett cannot establish a *prima facie* case for her Equal Pay Act claim. *Cf. Cullen*, 338 F3d at 700; *Harmon*, 2005 WL 2562991, at \*6. Summary judgment will therefore be granted on the Equal Pay Act claim.

### III.     Bartlett's Title VII Sex-Based Discrimination Claims

Bartlett claims under Title VII that NIBCO discriminated against her on the basis of her sex, with respect to her termination and her wages. [DE 1, ¶¶ 26-27.] *See* 42 U.S.C. § 2000e-2(a)(1). Bartlett can attempt to prove discrimination by using either the "direct" or "indirect" method of proof. *See Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006). But because Bartlett's only evidence of discrimination concerns allegedly similarly situated male employees, whom she contends were treated more favorably than her, it is apparent she is proceeding solely under the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802 (1973). *See Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 591-92 (7th Cir. 2008) (analyzing plaintiff's indirect proof using burden-shifting method where plaintiff presented no direct evidence of discrimination).

In her response brief, Bartlett ignores her discrimination claim as to her termination, and focuses only on her claim that her wages were based on a sex-based compensation program. [DE 26 at 11-12.] NIBCO, however, addresses both of Bartlett's Title VII discrimination claims [DE

24 at 13-15], and I will do the same.

A.     Bartlett's Title VII Termination Claim

To withstand summary judgment under the indirect method, Bartlett must first establish a *prima facie* case. Although both parties failed to address the issue, the requirements for Bartlett's *prima facie* case are set forth by the mini reduction-in-force ("RIF") framework, which modifies, and lightens the burden of, the traditional *McDonnell Douglas* framework. Where an eliminated employee is terminated, and her responsibilities are absorbed by others, the case should be treated as a "mini-RIF." *See Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 693 (7th Cir. 2000); *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000). It is that standard which governs this case since it is undisputed that Bartlett's duties were absorbed rather than eliminated. [DE 24 at 6.]

In the mini-RIF context, Bartlett is not required to show, as part of her *prima facie* case, that a "similarly situated employee" received more favorable treatment. *See Bellaver*, 200 F.3d at 495. Instead, the inference of discrimination arises from the fact that her duties were absorbed by other workers outside of the protected class. *Id.*, at 494; *see also Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006); *Michas*, 209 F.3d at 693. So Bartlett need only demonstrate that: "(1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) her duties were absorbed by employees not in [her protected class]." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690 (7th Cir. 2006). If Bartlett establishes a *prima facie* case, the burden of production then shifts to NIBCO to show legitimate, nondiscriminatory reasons for Bartlett's termination. *Johal*, 434 F.3d at 946. If NIBCO can provide such reasons, the burden shifts back

14

to Bartlett to attempt to show that NIBCO's stated reasons are pretextual. *Id.*

NIBCO does not dispute that Bartlett is in a protected class with respect to her sex, or that she suffered an adverse employment action when she was terminated. Nor does NIBCO dispute that Bartlett's job performance was up to expectations.

Thus, whether Bartlett can establish a *prima facie* case for sex discrimination as to her termination comes down to whether *most of her duties* were absorbed by employees not in the protected class. *See Merillat*, 470 F.3d at 690; *Bellaver*, 200 F.3d at 495 (noting that the Seventh Circuit previously upheld a jury finding of age discrimination where the plaintiff's duties "were absorbed mostly by younger workers who retained their jobs during a departmental restructuring"); *Knowles v. Trans Union LLC,* No. 03 C 4952, 2005 WL 3159363, at *10 (N.D. Ill. Nov. 21, 2005) (plaintiff in mini-RIF context "must show that her duties, at the very least, were absorbed mostly by employees not in her protected class"*); Kazhinsky v. William W. Meyer & Sons, Inc.*, No. 02 C 7254, 2003 WL 22735867, at *5 (N.D. Ill. Nov. 19, 2003) ("Because half of the individuals who assumed [plaintiff's] job duties were in the protected class, she cannot show that her duties were assumed solely or even primarily by employees outside the protected class."); *Hamilton v. National Propane*, 276 F. Supp. 2d 934, 946 (W.D. Wis. 2002) (holding in age discrimination case that, "case law indicates that plaintiff's duties need to be absorbed mostly by substantially younger employees, not entirely").

Bartlett fails to show that most of her duties were absorbed by male employees. She does not dispute that her duties were absorbed by Sheryl Hansen, a female senior products manager, and Bill Geers, a male. [DE 25, ¶ 18; DE 25-2, Ex. A, ¶ 13.] Geers avers, and Bartlett does not dispute, that he and Hansen jointly absorbed Bartlett's prior responsibilities. [DE 25, ¶ 18.] The

record does not indicate how Geers and Hansen allocated these responsibilities. But because Hansen is a senior products manager, reporting to Geers, the natural inference would be that she, and not Geers, had absorbed the bulk of Bartlett's prior responsibilities. Indeed, Geers notes his own contribution in absorbing Bartlett's prior responsibilities in a parenthetical, following the statement that Hansen absorbed those duties. [DE 25-2, Ex. A, ¶ 13.] In any event, Bartlett does not even address the issue, much less contend that Geers absorbed most of her former responsibilities. Nor is there any other evidence in the record that Geers absorbed the majority of Bartlett's former duties, which is what Bartlett would need to show to make out this element of her *prima facie* case.

Further, Bartlett also fails to establish a prima facie case under the traditional, unmodified *McDonnell Douglas* framework. Unlike the mini-RIF framework, the traditional *McDonnell Douglas* test would require Bartlett to show that she was treated less favorably than similarly situated male employees. *See, e.g., Peele v. Country Mut. Ins. Co.,* 288 F.3d 319, 326 (7th Cir. 2002). Bartlett fails to identify any such employees with respect to her discriminatory termination claim. Moreover, it is undisputed that NIBCO terminated Welsh the same day it terminated Bartlett. [DE 25, ¶ 26.] So Bartlett's contentions regarding Welsh—the only allegedly similarly situated male Bartlett identifies—cannot help her show she was selected for termination based on her sex.

These defects preclude Bartlett from establishing a *prima facie* case and warrant summary judgment in NIBCO's favor on Bartlett's Title VII claim that her termination was discriminatory.

**B.      Bartlett's Title VII Wage Discrimination Claim**

To show a *prima facie* case in a Title VII wage discrimination claim, a plaintiff must either proffer direct evidence of intentional sex discrimination in pay, or meet the equal pay standard of the Equal Pay Act. *See E.E.O.C. v. Sears Roebuck & Co.*, 839 F.2d 302, 342-43 (7th Cir. 1988); *see also Dunn v. United Airlines, Inc.*, No. 96 C 3689, 1998 WL 142400, at *3 (N.D. Ill. Mar. 24, 1998) (same). As noted, Bartlett's Equal Pay Act claim fails as a matter of law. Accordingly, to survive summary judgment on her Title VII wage discrimination claim, Bartlett must proffer direct evidence of intentional sex discrimination in pay.

Bartlett fails to provide any evidence of intentional sex discrimination in pay. To prove intentional discrimination, Bartlett must show, without resort to "proof via an assumption-laden scheme of prima facie cases, presumptions and rebuttals," an "intent to discriminate, and the intent must encompass an actual desire to pay women less than men because they are women." *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 525 (7th Cir. 1994); *see also E.E.O.C. v. Madison Cmty. Unit Sch. Dist. No. 12*, 818 F.2d 577, 587 (7th Cir. 1987). Bartlett offers no evidence of intentional discrimination with respect to pay. As noted, her evidence of discrimination as to pay is limited to her identification of allegedly similarly situated, higher paid, male employees. [DE 26 at 11-12.] The only higher paid male she even identifies is Welsh. And she offers no evidence whatsoever that the disparities between her salary and Welsh's were pursuant to a deliberate effort by NIBCO to pay women less than men because they are women. Moreover, the fact that Bartlett was paid *more* than Jeff Hlade, a male and the only other *associate product manager* in NIBCO's marketing department, all but demonstrates that Bartlett would be unable to show that NIBCO employed a sex-based compensation program. [DE 25, ¶¶ 5 & 9.]

Accordingly, Bartlett fails to establish a *prima facie* case of sex discrimination in pay.

17

So NIBCO is entitled to summary judgment on that claim as well.

## VI.     Bartlett's Indiana Civil Rights Law Claims

In her complaint, Bartlett brings her sex discrimination claims (as to wages and as to termination) under the Indiana Civil Rights Law as well as under Title VII. [DE 1, ¶¶ 26-27.] Neither party addresses Bartlett's Indiana Civil Rights Law claims on summary judgment. But I will do so briefly here. Indiana courts analyze discrimination claims under the Indiana Civil Rights Law using the standards set by federal court decisions interpreting Title VII. *See Filter Specialists, Inc. v. Brooks,* 906 N.E.2d 835, 839 (Ind. 2009); *Indiana Civil Rights Comm'n v. Southern Indiana Gas & Elec. Co*., 648 N.E.2d 674, 680-81 (Ind. App. Ct. 1995). Bartlett's Title VII discrimination claims fail as a matter of law. Accordingly, her Indiana Civil Rights Law claims, which are based on the same allegations underlying her Title VII discrimination claims, fail for the same reasons. *Id.*

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant NIBCO's Motion for Summary Judgment [DE 23] as to Plaintiff Sheri Bartlett's sex discrimination claims under Title VII and the Indiana Civil Rights Law (Count II), and as to Bartlett's Equal Pay Act claim (Count III). The Court **DENIES** summary judgment as to Plaintiff's retaliation claim under Title VII (Count I).

**SO ORDERED**.

ENTERED: April 28, 2010

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT